# APRIL TERM, 1873.

## R. S. BUCK v. W. H. VASSER, State Treasurer.

1. STATE LIABILITIES.—It is for the legislature to make only such provision as it may deem proper for the payment of the state debts.

2. SALARIES OF CIVIL OFFICERS DURING REBELLION.—The present rightful state government is not responsible for any claims for salaries as civil officers in the service of the insurrectionary state government which usurped control of the people of Mississippi during the rebellion.

ERROR to the circuit court of Warren county. BROWN, J.

The opinion of the court fully states the facts of the case.

*Buck & Clark,* for plaintiff in error,

Contended, the claim sought to be enforced by plaintiff in error, being for official services rendered the the state in her civil service, is a valid and subsisting debt that the state is bound to pay. The services rendered were in the interest of peace and good order; and the law, by virtue of which they were performed, was not inconsistent with the constitution of the United States. Rev. Code of 1857. All laws of an insurrectionary state, passed during the war, in the interests of peace and good order of her citizens, were valid; per force, those of like character enacted before the war, continuing during its existence, will be so recognized. Texas v. White, 7 Wall. 743; Buck v. Swan, 40 Miss. 268. See also Harlan v. the State, 41 ib. 566.

*J. S. Morris*, attorney-general, for defendant in error.

This was a proceeding, by *mandamus*, before the circuit court to compel the treasurer of the state to recognize, as valid and binding, certain auditor's warrants on the treasury, issued by one Gillespie, the Confederate auditor of public accounts of Mississippi, in April and October, 1862, and in January and November, 1863, for the total sum of $1,500 to relator, for one year's salary as district attorney of the then third judicial district of Mississippi, and to compel the treasurer to issue to the relator certificates of indebtedness in exchange for said warrants, under the provisions of an act, entitled "An act to provide for the issuance of certificates of indebtedness," etc., approved June 13, 1870, p. 20, § 2.

The principal questions are, whether a district attorney under the insurrectionary state government, in operation here in the years 1862–3, acting as a part and in the interests of the Confederate government, and against the interests and in subversion of the authority of the rightful government of the state of Mississippi as one of the United States, is entitled to demand and compel the payment of his salary, or any part thereof, as such rebel officer, out of the treasury of the rightful state government now in operation? Is he entitled to compel the payment of it, dollar for dollar, in the current funds of the present rightful government, notwithstanding his salary, under the auspices of the Confederate government, was payable, *prima facie* at least, in Confederate currency? Is the warrant of a Confederate auditor, addressed, as it is, to a Confederate treasurer for the payment of a Confederate district attorney in the Confederate currency of that day, good, as against the rightful treasurer of the rightful state government for the payment of legal currency to-day?

It has been so frequently and so recently decided, by this and other courts of last resort, that the insurgent power, which had possession of this state from the date

of the secession in January, 1861, to that of the restoration in 1865, was not the rightful government of the state of Mississippi, not a government *de jure,* and not even a government *de facto,* and that a contract for the payment of "dollars," during the period of the war, is *prima facie* a contract for Confederate dollars, that I deem it unnecessary, upon either proposition, to say more than merely cite some of the adjudged cases and some of the laws, ordinances and constitutional provisions upon which these adjudications proceeded.

I will not now press the point that the district attorneys of that melancholy period were, like the individuals who owned "fifteen slaves," among the special favorites of the Confederate government, and therefore exempt from military service by all the laws, confederate and state. But see Acts of Confederate Congress of April 21, 1862, § 1; Pamphlet Acts of Miss. of 1863, p. 107, § 29.

But I call special attention to the case of Thomas v. Taylor, 42 Miss. 461, which this court, speaking through the present learned chief justice, held the government, of which this ex-district attorney was a part, to be a mere "unlawful combination of rebellious persons usurping the government, and forcibly controlling the people," and that it was no government at all, *de facto* or *de jure.* And, so far as the questions involved in the present inquiry are concerned, the doctrine of Taylor v. Thomas is fully upheld by very many other cases. Texas v. White, 7 Wall. 700; Cassell v. Backrack, 42 Miss. 56; Buchanan v. Smith et al., 43 Miss. 90; Miss. Central R. R. Co. v. the State, 46 Miss., and the authorities cited in each of those cases.

The warrants here considered are contracts, if anything, and if contracts, they are contracts for Confederate money. See Ordinances of Constitutional Convention of 1865, p. 40, § 3; Acts of 1865, p. 145; Acts of 1867, p. 373, § 2; Cowen v. McCutchen, 43 Miss. 207.

And if for Confederate money, then it might well be contended that they are void. Hale v. Huston, 44 Ala. 134; Lawson v. Miller, ib. 616. But I waive this for the present, and submit that if district attorneys in 1862–3 were a part of the insurrectionary government of that period, then the state is forbidden to pay them by the 14th article of amendment to the constitution of the United States, the proviso being, that " neither the United States nor any state shall assume or pay any debts or obligations incurred in aid of insurrection, but all such debts, obligations and claims shall be held illegal and void."

TARBELL, J.:

At the regular state election for this state, held in 1858, R. S. Buck was elected district attorney, for the third judicial district, for the term of four years from the first Monday of January, 1859. He was duly qualified, and entered, at the proper time, upon the duties of the office, which he held to 1862, when he was re-elected for another term. His salary was $1,500 per annum, on which there is due him, and for which he holds the warrants of the auditor, as follows: Warrant No. 4198 for $375, dated April 17th, 1862; warrant No. 2207 for $375, dated October 11th, 1862; warrant No. 2786 for $375, dated January 19th, 1863; warrant No. 482 for $375, dated November 12th, 1863; total amount in arrears and claimed to be due, $1,500. On the 8th day of October, 1870, under sec. 2 of the law approved June 13th, 1870, entitled, " An act to provide for the issuance of certificates of indebtedness of the state, and for other purposes," Buck tendered to the state treasurer the aforesaid warrants, and demanded in exchange therefor certificates of indebtedness, issued in pursuance of said law last named. The treasurer refusing to comply with this demand, Buck applied by petition to the judge of the fifteenth judicial district,

for a *mandamus* to compel the treasurer to make such exchange.

The answer of the treasurer is as follows:

He says, " he ought not to be commanded to exchange certificates of indebtedness for the warrants mentioned in relator's petition, because said warrants were issued in payment of a salary claimed by relator as an officer of the late illegal government temporarily set up in the state of Mississippi, in violation of the constitution of the United States and in rebellion against the government thereof; that said illegal government having been overthrown and abolished by the power of the United States, all its debts and obligations perished with it; that none of said debts and obligations have been inherited and assumed by the existing government of the state, and that, consequently, the warrants issued to relator, as aforesaid, are not 'warrants issued by the auditor of public accounts of this state,' within the purview and meaning of the 'act to provide for the issuance of certificates of indebtedness by the state, and for other purposes,' approved June 13th, 1870." Upon the hearing, the court refused a peremptory *mandamus*, and dismissed the petition. From that judgment Buck prosecuted a writ of error, assigning for cause of reversal of the action of the circuit court, the refusal of a peremptory *mandamus*, and the dismissal of the petition therefor.

To the maintenance of the claim of the plaintiff in error there are insurmountable obstacles, both upon technical grounds and upon general principles.

1. As to the legal and technical difficulties:

On the 25th day of October, 1865, there was approved a joint resolution of the legislature of this state, which resolution is in these words: "Resolved, by the legislature of the state of Mississippi, that the auditor of public accounts be, and he is hereby, directed to

issue no more warrants upon the treasurer for the payment of money, until further orders."

On the 31st day of October, 1865, another resolution of the legislature was approved, as follows: "That the treasurer be, and he is hereby, ordered not to pay out any monies now remaining, or that may hereafter be received, in the treasury of the state, unless specially ordered by the legislature, until further orders."

By an act, approved December 2, 1865, it is provided: "That the treasurer be and he is hereby authorized to pay all auditor's warrants issued by authority of the legislature, and all appropriations passed at the present session; and also all salaries of state and district officers and other claims, accruing since the 16th day of October, 1865, out of any moneys in the treasury not otherwise appropriated."

Another similar act was approved December 4, 1865, to this effect: "That the auditor of public accounts be, and he is hereby, authorized to issue his warrants on the treasurer for all legal claims against the state, accruing from the 16th day of October, 1865."

The evident purpose and effect of these resolutions and enactments were, to prohibit the issuance of warrants for and the payment of claims against the state, existing prior to October 16, 1865, on which day the legislature of that year assembled. So held in Swan v. Buck, 40 Miss. 268, wherein, Buck, the present petitioner, having prayed a writ of mandamus to compel the then auditor to issue warrants to him for his services as district attorney, from October, 1863, to May, 1865, it was held, that these resolutions and acts were valid and binding prohibitions upon the auditor and treasurer, as to claims anterior to the said 16th October, 1865. The court say: "It is plain that the two acts last named are based on the assumption that all authority to issue and pay warrants had been repealed, and they restore that authority to the extent that it is intended

to be afterwards exercised." The conclusion of the court in that case is emphasized by reference to the impoverished condition of the country at the close of the war, and it is declared to have been the policy of the legislature of 1865, " to attempt no more than the collection of a sufficient amount of revenue to defray the necessary current expenses of the government." And it is added, that, "in doing so, it seems difficult to deny that the legislature exercised its legitimate powers in a wise and beneficial manner." This branch of that case is concluded by the observation that, " it is for the legislature to make such provisions for the discharge " * * of the * * * obligations that rest upon it, as they may deem wise and proper." It is insisted by the plaintiff in error, that the legislative power and discretion have been since exercised in the passage of the law approved June 13, 1870, by the second section of which, he claims, the state treasurer is authorized and required, upon his demand, to give him certificates of indebtedness in exchange for his warrants above described. That section two is as follows: "That said certificates, when prepared upon such paper and with such devices as the auditor may determine upon, and signed as aforesaid, shall be numbered and registered tered in the office of the auditor of public accounts, and by him paid into the state treasury, upon the warrant of the auditor, as in the other cases of payment into the treasury, and shall be charged to the treasurer as other payments, and the treasurer shall enter said certificates as such assets, and shall exchange them, in all cases when practicable, for the warrants issued by the auditor of public accounts of this state."

We do not think the view of the plaintiff in error to be within either the letter or spirit of this law, much less within its scope and intent. And, besides, until the judgment in the case of Swan v. Buck, *supra*, shall be overruled, the legislative intent to pay the debts or

claims suspended by the resolutions and laws of 1865, must necessarily be expressed in direct and positive terms. Those resolutions and laws, the case of Swan v. Buck, and public history considered, it cannot be seriously contended that the law of 1870 was intended, or does, in fact, embrace the class of claims exhibited in the case at bar.

But further. In the L ws of 1865, p. 145, ch. 12, is a significant act referred to by the attorney-general, but probably overlooked by the plaintiff in error, as it is not referred to by him either in his petition or brief. Section two of that act is as follows : " That the salary of any public officer, or the amount due any claimant or creditor of the state, shall be payable in the currency of the country when such salary, account or indebtedness occurred." The language of this section is broad, general and peculiar, and seems to be fatal, of itself, to the " claimant " in the case at bar, in several respects. First, as a prohibition of the payment of this class of claims, except in the currency of the country " when " such claim accrued. And, secondly, it declares, in effect, the policy of the restored government to be opposed to the assumption of the liabilities of the insurrectionary assemblages. This law is fairly retributive in its justice, and indicates the sentiments and uncertainties of 1865, as well as a disposition on the part of the representatives of the people to do the best they could under the circumstances, which was to pay claims like the one at bar in the currency the parties had helped to create.

2. The principle involved. As between citizens, in cases arising during or growing out of the war, we have endeavored to do exact justice. And we adhere to the rules stated in these cases, and to the doctrines of the supreme court of the United States, as we understand them, as affording a wise and almost inspired solution of unusual problems. We are now asked to award the

payment by the present state government of a debt due from the revolutionary organization to one of its officials. This is without precedent, and, in our view, unauthorized by prior decisions of this court, or of the federal court. To sustain the claim of the plaintiff in error, it would be necessary to adopt, as to the status of the state during the rebellion, the theory of the cases of Buck v. Swan, 40 Miss. 268; Hill v. Boyland, ib. 618; Harlan v. the State, 41 ib. 566; and to take a step unwarranted by any proper logical deductions from our own or the adjudications of the U. S. supreme court. We should regard this advance upon our former decisions as fraught with dangerous and fatal consequences; while, at the same time, we do not, as we have not heretofore done, give our assent to what we regard the extreme views of the courts of some of the states in this class of cases. As indicating the general views and policy of this court upon a particular subject, reference is made to Thomas v. Taylor, 42 Miss. 461; Buchanan v. Smith, 43 ib. 90; Miss. C. R. R. Co. v. the State, 46 ib., and the authorities and reasons on which they are based. Between the conclusions stated therein, and the deductions necessary to a basis for the proposition of the plaintiff in error, there is a wide distinction, which we are not at liberty, nor willing, to disregard.

Of course, the petitioner, upon his election in 1858, subscribed the usual oath of office to the government then in existence, and in the progress of events gave in his allegiance to the insurrectionary movement, and took the oath of office prescribed thereby. For his salary while in the service of that illegal undertaking, he must look to the " unlawful combination of rebellious persons usurping the functions of government, and forcibly controlling the people." Loss of salary in such service is one of the trifling penalties attached to the " unlawful combination."

*The judgment is affirmed, and the petition dismissed.*